**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-61810-SINGHAL/STRAUSS**

**JANE DOE,**

     Plaintiff,

v.

**RKR RESTAURANTS FL, LLC,**

     Defendants.

                         /

## ORDER

THIS MATTER came before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Motion") [DE 22].[1]  I have reviewed the Motion, the Response [DE 25] and Reply [DE 26] thereto, and all other pertinent portions of the record.  For the reasons discussed herein, the Motion [DE 22] will be **GRANTED** to the extent that the Amended Complaint will be dismissed without prejudice and with leave to amend.

## BACKGROUND

Defendant employed Plaintiff, who is a Black female of Haitian descent, at a Wendy's Restaurant in Pompano Beach, Florida.  Amended Complaint [DE 18] ¶¶ 6, 7, 10.  At the same location, Defendant employed Tresel Marquese Huffman ("Huffman") as a shift manager.  *Id.* ¶¶ 8, 11.

On January 14, 2024, Huffman followed Plaintiff into the walk-in cooler.  *Id.* ¶ 17.  Prior to doing so, Huffman obscured a security camera to prevent it from recording.  *Id.* ¶ 18.  Inside the cooler, Huffman sexually assaulted Plaintiff.  *Id.* ¶ 19.  Among other things, Huffman: (1) grabbed

---

[1] The District Court has referred the Motion to me, and the parties have consented to me ruling on the Motion.  *See* [DE 28, 30].

Plaintiff's buttocks and breasts without her consent; (2) pushed Plaintiff toward the freezer door and pressed her neck with his hand, physically restraining her; (3) fondled himself and attempted to undress both himself and Plaintiff; and (4) attempted to strangle Plaintiff with his arm when Plaintiff resisted and told him to get off of her. *Id.* Huffman confined Plaintiff in the cooler against her will for more than thirty minutes. *Id.* ¶¶ 20, 23. Following Huffman's sexual assault of Plaintiff, Huffman was arrested and charged with three counts of battery for unlawful and nonconsensual touching of Plaintiff's buttocks and breasts. *Id.* ¶ 25. He was subsequently adjudicated guilty of battery, ordered to pay fines, and placed on probation. *Id.* ¶ 26.

Although Huffman's conduct escalated when he sexually assaulted Plaintiff on January 14, 2024, that was not the first time Huffman made advances towards Plaintiff. Prior to that date, Huffman "repeatedly made unwelcome sexual advances toward Plaintiff, including persistent requests for dates and to be his girlfriend." *Id.* ¶ 12. Plaintiff consistently rejected Huffman's "advances and made it clear that such conduct was unwelcome." *Id.* ¶ 13. The store manager "was personally aware of Huffman's inappropriate conduct" prior to January 14, 2024. *Id.* ¶ 14. However, neither the store manager or Defendant conducted any investigation or took any other action on account of Huffman's conduct preceding Huffman's sexual assault of Plaintiff. *Id.* ¶¶ 15-16.

Based upon the foregoing, Plaintiff brings eight claims against Defendant, which she styles as follows: (I) Sex Discrimination – Florida Civil Rights Act (FCRA); (II) Hostile Work Environment – FCRA; (III) Sexual Harassment – Title VII of the Civil Rights Act of 1964; (IV) Negligence; (V) Negligent Hiring and Supervision; (VI) Respondeat Superior (Vicarious Liability); (VII) Intentional Infliction of Emotional Distress; and (VIII) False Imprisonment.

## LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

3

## ANALYSIS

### A.  COUNTS I-III

Counts I-III appear to assert hostile work environment claims based on sexual harassment. Counts I and II are brought under the FCRA; Count III is brought under Title VII.  Nevertheless, "[c]laims under Title VII and the FCRA are analyzed under the same framework." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1300 n.2 (11th Cir. 2023) (citations omitted).  It is, however, unclear why Plaintiff includes two separate FCRA claims in the Amended Complaint (Counts I and II).  Although Plaintiff labels Counts I and II differently, both counts appear to assert the same claim, making the counts duplicative of each other.  Plaintiff even seems to concede that Counts I and II are not materially different.  *See* [DE 25] at 4 (arguing that "Count I should be construed as overlapping with, incorporated into, or coextensive with Plaintiff's hostile work environment claims in Counts II and III, rather than dismissed with prejudice").  At any rate, Plaintiff's hostile work environment claims will be dismissed – without prejudice and with leave to amend – for the reasons discussed herein.  When Plaintiff amends her complaint, she should not include two FCRA claims *unless* there are material differences between the two claims.

As to the substance of Plaintiff's claims in Counts I-III, Title VII makes it "unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting 42 U.S.C. § 2000e-2(a)(1)).  "Sexual harassment that takes the form of a hostile work environment is actionable under Title VII." *Id.* (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)).  To prevail on a hostile work environment claim based on sexual harassment, an employee must establish the following elements:

(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)).

The Amended Complaint fails to plausibly allege a basis for holding Defendant (the employer) liable. An "employer can be responsible for the harassing conduct under a theory of either vicarious liability or direct liability." *Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1287 (11th Cir. 2018) (quoting *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012)). However, for vicarious liability to apply, the person who created the hostile work environment must be "a supervisor with immediate (or successively higher) authority over the employee." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). An individual is only a "'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 450 (2013). Being so empowered – to take "tangible employment actions" – means being able "to effect a 'significant change in [the victim's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* at 431 (citation omitted). "The ability to direct another employee's tasks is simply not sufficient." *Id.* at 439.

Here, the factual allegations in the Amended Complaint are insufficient to plausibly show that Huffman qualifies as a "supervisor" under *Vance* such that Defendant could be vicariously

5

liable for Huffman's actions.  Plaintiff does allege that Huffman was a "shift manager."  *See, e.g.*, Amended Complaint ¶ 11.  And Plaintiff does allege – albeit not in the hostile work environment counts of the Amended Complaint – that Huffman had "supervisory authority" over her.  *Id.* ¶ 72. However, the Amended Complaint is devoid of factual allegations showing that Huffman had the ability to effect a significant change in Plaintiff's employment status (*e.g.*, hiring or firing), and Plaintiff's "shift manager" and "supervisory authority" allegations are labels and conclusions, not well-pled factual allegations that are entitled to the assumption of truth.[2]  Because the Amended Complaint does not include factual allegations plausibly showing that Huffman was Plaintiff's "supervisor," it fails to establish that vicarious liability is a basis for holding Defendant liable for Plaintiff's hostile work environment claims.

As noted above, however, an employer may also be responsible for a hostile work environment under a theory of direct liability.  *Wilcox*, 892 F.3d at 1287.  "[A]n employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior."  *Vance*, 570 U.S. at 427.  Negligence provides the framework for evaluating whether an employer is liable for one employee's harassment of another employee.  *See id.* at 427, 439.  "[A]n employer will always be liable when its negligence leads to the creation or continuation of a hostile work environment."  *Id.* at 446.  Thus, an employer will be held directly liable for the harassment "if it knew or should have known of the harassing conduct but failed to

---

[2] *See McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) ("Conclusory allegations are not entitled to the assumption of truth." (citing *Iqbal*, 556 U.S. at 679)); *see also Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) ("[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012))); *Jones v. CitiMortgage, Inc.*, 666 F. App'x 766, 772 (11th Cir. 2016) ("Allegations that are no more than 'labels and conclusions,' a 'formulaic recitation of the elements of a cause of action,' or 'naked assertions devoid of further factual enhancement' are not well-pled facts that must be accepted as true and will not be sufficient to withstand a motion to dismiss." (citing *Iqbal*, 556 U.S. at 678)).

take prompt remedial action." *Wilcox*, 892 F.3d at 1287 (citing *Miller*, 277 F.3d at 1278).  In other words, an employer that has actual or constructive notice of the harassment but fails to promptly take corrective action will be liable.  *See Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003).

In Counts I-III, Plaintiff alleges that Defendant had both actual and constructive notice or knowledge of Huffman's harassment but failed to take remedial action.  *See* Amended Complaint ¶¶ 14, 38-39, 44, 55-56.  But the Amended Complaint fails to indicate what it is that Defendant had knowledge or notice of prior to Huffman's January 14, 2024 sexual assault of Plaintiff. Plaintiff alleges – using labels and conclusions – that Defendant had knowledge of Huffman's "inappropriate conduct," "flirtations," and "comments" preceding January 14, 2024.  *Id.* ¶¶ 14, 38-39, 44.  However, the Amended Complaint does not allege any particular "comments" that Huffman made prior to January 14, 2024, and the only factual allegations regarding Huffman's conduct prior to January 14, 2024 are that Huffman "made persistent requests for dates and [for Plaintiff] to be his girlfriend."  *Id.* ¶ 12; *see also id.* ¶ 35 ("requests for dates"); *id.* ¶ 43 ("persistent requests for dates" and "attempts to initiate a romantic relationship"); *id.* ¶ 52 (same).  Plaintiff does also allege that Huffman "made unwelcome sexual advances" prior to January 14, 2024, *id.* ¶ 12, but Plaintiff's "unwelcome sexual advances" allegation is a conclusory allegation that is not entitled to the assumption of truth.  *See supra* note 2.  So, at most, the Amended Complaint alleges that Defendant had knowledge of Huffman making persistent requests for Plaintiff to date him and be his girlfriend.  What it does not contain, though, are *factual allegations* showing any conduct of a *sexual nature* by Huffman prior to January 14, 2024 of which Defendant had actual or

constructive notice.  Thus, the Amended Complaint fails to plausibly allege a basis for holding Defendant liable.[3]

## B.  COUNTS IV-V

Plaintiff's negligence-based claims, as presently pled, fall short for essentially the same reason as Plaintiff's claims in Counts I-III.  That is, Plaintiff has failed to plausibly allege constructive or actual notice on the part of Defendant.  In other words, Plaintiff has failed to plausibly allege facts showing that Huffman's sexual assault of Plaintiff was foreseeable.  *See Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002) ("The core predicate for imposing liability is one of reasonable foreseeability—the cornerstone of our tort law. With regard to the claim for negligent hiring, the inquiry is focused on whether the specific danger that ultimately manifested itself (e.g., sexual assault and battery) reasonably could have been foreseen at the time of hiring." (internal citations omitted)).

As an initial matter, it is unclear how, if at all, Counts IV and V are materially different from each other.  Count IV is styled as a negligence claim, and Count V is styled as a negligent hiring and supervision claim, but both appear to be premised upon a theory of negligent supervision or retention.  In Count IV, Plaintiff alleges, *inter alia*, that "Defendant failed to investigate or act upon complaints and reports regarding Huffman's conduct" and that "Defendant's lack of

---

[3] The parties also dispute whether a hostile work environment claim requires both "severe *and* pervasive conduct" (Defendant's position) or whether either "severe *or* pervasive conduct" will suffice (Plaintiff's position).  In this regard, Plaintiff is undoubtedly correct.  "An employee may prevail by showing '[e]ither severity *or* pervasiveness.'" *Melton v. I-10 Truck Ctr. Inc*, 166 F.4th 905, 918 (11th Cir. 2026) (quoting *Reeves*, 594 F.3d at 808).  And at the motion to dismiss stage, the brutal sexual assault Plaintiff alleges she suffered on January 14, 2024 undoubtedly qualifies as "severe."  Again, the issue with the Amended Complaint is that it does not include enough factual allegations to plausibly allege Defendant had knowledge of sexual harassment by Huffman prior to January 14, 2024, such that Defendant can be held directly liable here.  If Plaintiff seeks to hold Defendant liable, Plaintiff must include additional factual allegations regarding what Defendant had knowledge of prior to January 14, 2024.

supervision created the exact conditions under which Plaintiff was sexually assaulted and confined."   Amended Complaint ¶¶ 61-62.[4]   In Count V, Plaintiff alleges, *inter alia*, that "Defendant owed a duty to exercise reasonable care in hiring, retaining, and supervising its employees, including Huffman," that "Defendant was aware of Huffman's inappropriate behavior," and that Defendant nevertheless "failed to take appropriate action to prevent Huffman from harassing and assaulting Plaintiff."  *Id.* ¶¶ 65-67.[5]

"[T]he negligent hiring and negligent retention theories of liability permit an injured plaintiff to recover damages against an employer for acts of an employee committed outside the scope and course of employment."[6]  *Magill v. Bartlett Towing, Inc.*, 35 So. 3d 1017, 1020 (Fla. 5th DCA 2010) (citing *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. 2d DCA 1986)).  "Under these theories of liability, an employer can be held responsible for an employee's willful torts if the employer knew or should have known that the employee was a threat to others."  *Id.* (citing *Williams v. Feather Sound, Inc.*, 386 So. 2d 1238 (Fla. 2d DCA 1980)) (footnote omitted).

---

[4] Plaintiff also alleges in Count IV that Defendant owed Plaintiff a duty "to provide a safe work environment free from sexual harassment . . . ."  *Id.* ¶ 59.  However, "Florida does not recognize a common law cause of action for negligent failure to maintain a workplace free of sexual harassment."  *Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1030 (Fla. 1st DCA 2002) (citing *Scelta v. Delicatessen Support Serv., Inc.,* 57 F.Supp.2d 1327 (M.D. Fla. 1999)).  At any rate, Count IV is not solely premised upon Defendant allegedly breaching a duty to provide a work environment free of sexual harassment.

[5] Count V also makes reference to Defendant allegedly failing to review background checks (presumably Huffman's), *see id.* ¶ 69, but none of the facts alleged in the Amended Complaint otherwise suggest that Plaintiff was negligent in hiring Huffman, only that Defendant was negligent in supervising or retaining Huffman.

[6] Therefore, as a technical pleading matter, Plaintiff's incorporation (into Counts IV and V) of her allegation in paragraph 28 of the Amended Complaint that "Huffman was acting within the course and scope of his employment as Defendant's agent and employee" negates Plaintiff's claims in Counts IV and V.  *See Acts Ret.-Life Communities Inc. v. Est. of Zimmer*, 206 So. 3d 112, 116 (Fla. 4th DCA 2016) ("By its very nature, an action for negligent retention involves acts which are *not* within the course and scope of employment." (quoting *City of Boynton Beach v. Weiss*, 120 So.3d 606, 610 (Fla. 4th DCA 2013))).

Employers, however, are not "strictly liable for criminal acts committed by a 'dangerous employee' against a third person." *Id.* (citing *Garcia*, 492 So. 2d at 439); *see also Total Rehab. & Med. Centers, Inc. v. E.B.O.*, 915 So. 2d 694, 697 (Fla. 3d DCA 2005).

"Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *Acts Ret.-Life Communities*, 206 So. 3d at 114 (quoting *Dep't of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005)); *see also Tercier v. Univ. of Miami, Inc.*, 383 So. 3d 847, 853 (Fla. 3d DCA 2023) ("To prove such cause of action, the plaintiff must show: (1) the employer became aware or should have become aware that the subject employee was 'unfit,' and (2) the employer failed to take further action, e.g., investigation, discharge, reassignment." (citing *Bennett v. Godfather's Pizza, Inc.*, 570 So. 2d 1351, 1353 (Fla. 3d DCA 1990))).[7] "In order to state a cause of action for the tort of negligent hiring or retention recognized in Florida, a plaintiff must allege facts showing that the employer was put on notice of the harmful propensities of the employee." *Willis v. Dade Cnty. Sch. Bd.*, 411 So. 2d 245, 246 n.1 (Fla. 3d DCA 1982) (internal citations omitted). Courts "need only look to whether 'the specific danger which ultimately manifested itself could have reasonably been foreseen' as a result of hiring or retaining an employee." *Wal-Mart Stores, Inc. v. Caruso*, 884 So. 2d 102, 105 (Fla. 4th DCA 2004) (quoting

---

[7] *See also Malicki*, 814 So. 2d at 362 n.15 ("The primary distinction between a claim for negligent hiring and a claim for negligent supervision or retention concerns the time at which the employer is charged with knowledge of the employee's unfitness. A claim for negligent hiring arises when, before the time the employee is hired, the employer knew or should have known that the employee was unfit. Liability in these cases focuses on the adequacy of the employer's pre-employment investigation into the employee's background. Liability for negligent supervision or retention, however, occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment." (internal citations and quotation marks omitted)).

*Malicki*, 814 So. 2d at 363).   "There must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee."  *Lee v. Harper*, 328 So. 3d 384, 388 (Fla. 1st DCA 2021) (quoting *Dickinson v. Gonzalez*, 839 So. 2d 709, 713 (Fla. 3d DCA 2003)) (alteration adopted).   And a "plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action."  *Id.* (quoting *Hardy*, 907 So. 2d at 660); *see also Saphir by & through Saphir v. Broward Cnty. Pub. Schs.*, 744 F. App'x 634, 640 (11th Cir. 2018).

As discussed in the context of Counts I-III above, the Amended Complaint is devoid of factual allegations plausibly showing that Defendant was put on notice of Huffman's harmful propensities.   At most, Plaintiff alleges that Defendant had knowledge that Huffman persistently requested that Plaintiff – and other female staff members – date him and be his girlfriend.  *See, e.g.*, Amended Complaint ¶ 66.  Such knowledge, without more, is insufficient to make it plausible that Defendant could have reasonably foreseen the specific danger which ultimately manifested – Huffman's sexual assault of Plaintiff – as a result of retaining Huffman.   In other words, connection and foreseeability do not exist between Huffman's employment history and Huffman's sexual assault of Plaintiff.   Therefore, Counts IV and V presently fail to state a claim against Defendant.[8]

---

[8] Defendant raises several other arguments for dismissal that are entirely misplaced.  Although I will not address all such arguments given that Counts IV and V presently fail to state a claim, I will briefly address a couple.  First, Defendant contends that "the requisite underlying misconduct does not exist."  [DE 22] at 4.  In this regard, "[i]t is necessary that the underlying wrong—the actions of the employee or servant—be a tort."  *Tercier v. Univ. of Miami, Inc.*, 383 So. 2d at 853 (quoting *Acts Ret.-Life Communities*, 206 So. 3d at 115).  Huffman's actions were clearly tortious. In fact, his sexual assault of Plaintiff led to criminal charges.  Defendant's argument regarding the absence of underlying conduct is therefore meritless.  Second, Defendant argues that the impact rule bars Plaintiff's claims.  While Plaintiff does not allege an impact prior to Huffman sexually assaulting her on January 14, 2024, Plaintiff's negligence claims are plainly premised upon Defendant's alleged failure to act leading to Huffman's sexual assault of Plaintiff on January 14,

### C.  COUNT VI

Defendant contends that Count VI should be dismissed because vicarious liability is a theory of liability, not an independent cause of action.  *See* [DE 22] at 15 (citing *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016)).  Plaintiff does not appear to dispute the foregoing in her response.  She does state that "should there be any deficiencies in Plaintiff's method of notifying Defendants of her allegations of respondeat superior, Plaintiff should be given leave to replead the theory of liability more specifically into the previous Counts." [DE 25] at 14.  In support, Plaintiff cites an out-of-district case, asserting that the court in that case "refused to strike the Complaint's allegations of respondeat superior because they provide notice to Defendants that Plaintiffs intended to pursue this avenue of relief."  *Id.* (citing *Robinson v. Pytlewsi*, No. 8:19-CV-01025-PX, 2020 WL 607030, at *10 (D. Md. Feb. 7, 2020)).  Notably, though, the court in *Robinson* dismissed the respondeat superior count in that case, explaining that "[t]he doctrine does not give rise to an independent cause of action but is rather theory of liability." 2020 WL 607030, at *10.  Thus, the court's explanation in *Robinson* actually supports Defendant's argument that Count VI of the Amended Complaint in this case should be dismissed.  Moreover, in addition to *Ceithaml* (the case Defendant relies upon), other federal district court cases in Florida also support Defendant's request for dismissal of Count VI on the basis that vicarious liability (or

---

2024.  *See* Amended Complaint ¶ 62 ("Defendant's lack of supervision created the exact conditions under which Plaintiff was sexually assaulted and confined."); *id.* ¶ 67 (emphasis added) ("Defendant failed to take appropriate action to prevent Huffman from harassing and *assaulting* Plaintiff."); *id.* ¶ 69 (alleging Defendant's negligence "directly enabled the assault").  Any contention that Huffman's sexual assault of Plaintiff does not satisfy the impact rule is meritless. In the event Plaintiff amends her complaint and Defendant files another motion to dismiss, Defendant should refrain from raising meritless arguments, and Defendant should adhere to the Court's requirement that filings be double-spaced [DE 3] – something that should be much easier to achieve if Defendant removes the meritless arguments presently included in the Motion.

12

respondeat superior) is not an independent cause of action or standalone claim.[9]  Therefore, Count

VI will be dismissed.  However, it will be dismissed without prejudice to the extent that Plaintiff

may rely on vicarious liability as a theory for holding Defendant liable for other claims if she is

able to do so.

### D.  COUNT VIII[10]

In Count VIII, Plaintiff attempts to hold Defendant liable for Huffman's false

imprisonment of Plaintiff.  "An employer may be liable under the doctrine of *respondeat superior*

for an employee's acts that are committed within the course and scope of employment."  *Weiss*,

120 So. 3d at 611 (citing *Garcia*, 492 So.2d at 438); *see also Trabulsy v. Publix Super Mkt., Inc.*,

138 So. 3d 553, 555 (Fla. 5th DCA 2014) ("An employer's liability for an employee's intentional

acts may arise when the acts are 'within the real or apparent scope' of employment." (quoting

*Weiss v. Jacobson*, 62 So. 2d 904, 906 (Fla. 1953))).  "In the case of intentional torts, a plaintiff's

mere showing that an employee was on duty at the time he assailed someone is not sufficient to

establish that the conduct occurred within the scope of employment."  *Fields v. Devereux Found.,*

*Inc.*, 244 So. 3d 1193, 1196 (Fla. 2d DCA 2018).  "The general rule is that an employer cannot be

held liable for the tortious or criminal acts of an employee, unless they were committed during the

course of the employment and to further a purpose or interest, however excessive or misguided, of

---

[9] *See, e.g.*, *M.H. v. Omegle.com, LLC*, No. 8:21-CV-814-VMC-TGW, 2022 WL 93575, at *5 n.2 (M.D. Fla. Jan. 10, 2022); *Chunhong Jia v. Boardwalk Fresh Burgers & Fries, Inc.*, No. 8:19-CV-2527-T-33CPT, 2020 WL 5628734, at *2 (M.D. Fla. Sept. 21, 2020); *Gonzales v. Carnival Corp.*, No. 20-CV-22342-UU, 2020 WL 13369794, at *2 (S.D. Fla. Aug. 26, 2020); *Munday v. Carnival Corp.*, No. 16-CV-24841-KMW, 2017 WL 5591640, at *4 n.2 (S.D. Fla. July 18, 2017); *Colite Int'l Inc. v. Robert L. Lipton, Inc.*, No. 05-60046-CIV, 2006 WL 8431505, at *12 (S.D. Fla. Jan. 20, 2006).

[10] As noted below, Count VII will be dismissed without prejudice for the same reason as Count VIII. *See infra* note 12.

the employer." *Goss v. Hum. Servs. Assocs., Inc.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012) (quoting *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985)).

An employee's conduct occurs within the course and scope of employment if it: "(1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the master." *Id.* (citing *Sussman v. Fla. E. Coast Props., Inc.*, 557 So. 2d 74, 75-76 (Fla. 3d DCA 1990)). "Sexual assaults and batteries committed by employees are generally 'held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer.'" *Id.* (quoting *Nazareth*, 467 So. 2d at 1078). "An exception exists when the employee purported to act on behalf of the employer or when the employee was aided by the agency relationship." *Id.* (citing *Nazareth*, 467 So. 2d at 1078).

Defendant contends that it cannot be held vicariously liable for Huffman's assault and false imprisonment of Plaintiff. According to Defendant, the allegations of the Amended Complaint do not establish "that Huffman was hired to sexually harass/imprison [Plaintiff], that such alleged conduct was related to his duties, or that the alleged conduct served [Defendant's] business interests." [DE 22] at 14. Therefore, Defendant asserts that Huffman was not acting within the scope of his employment. In her response, Plaintiff states, *inter alia*, that she has alleged "Huffman confined her in a walk-in cooler, restrained her, and prevented her from leaving while he assaulted her." [DE 25] at 18. Plaintiff contends her allegations are sufficient at this stage to state a claim for false imprisonment.

The Court agrees with Plaintiff when it comes to Huffman (and Defendant does not appear to dispute that Plaintiff plausibly alleges Huffman falsely imprisoned her). But Huffman is not a defendant in this action. Rather, Plaintiff is attempting to hold Huffman's employer (Defendant)

14

liable for Huffman's intentional tort.  Plaintiff's response, however, fails to address the substance of Defendant's arguments in the Motion.  At most, the false imprisonment section of Plaintiff's response contains a single sentence at the end that indirectly addresses Defendant's vicarious liability argument.  Plaintiff merely states, in a perfunctory manner, that "[w]hether Huffman's supervisory authority enabled the confinement is a fact-intensive inquiry inappropriate for resolution on a motion to dismiss."  [DE 25] at 18.  Plaintiff, however, does not develop her perfunctory argument or cite any authorities to support it.[11]

At any rate, the Amended Complaint fails to allege enough facts to plausibly show that Defendant can be held liable for Huffman's intentional torts here.[12]  Specifically, Plaintiff fails to include factual allegations showing that Huffman's conduct was "of the kind [Huffman was] hired to perform" or "activated at least in part by a purpose to serve the master [i.e., Defendant]."  *Goss*, 79 So. 3d at 132.  In other words, none of the factual allegations suggest (plausibly or otherwise) that Huffman assaulted Plaintiff *for the purpose of* benefiting any interest of Defendant.  *Cf. Ruiz v. Aerorep Grp. Corp.*, 941 So. 2d 505, 507 (Fla. 3d DCA 2006) ("As the amended complaint . . . failed to set forth any factual allegation supporting that Mrs. Ruiz's co-employee battered Mrs. Ruiz with the purpose of benefiting the interests of Aeropostal, the trial court was correct in dismissing their claims alleging a Whistleblower's Act violation.").  Ultimately, notwithstanding

---

[11] To the extent Plaintiff is relying on the exception that exists when an employee is aided by the agency relationship, Plaintiff needs to include further factual allegations to plausibly establish that exception.  And if Plaintiff does so in a second amended complaint, and if defendant again files a motion to dismiss, Plaintiff will need to develop her argument and point to specific authority supporting her argument.

[12] The same applies to Plaintiff's intentional infliction of emotional distress (IIED) claim in Count VII.  Although the parties' arguments regarding Count VII focus on the outrageousness requirement of IIED claims, Count VII really fails for the same reason as Count VIII – the absence of a plausible basis for holding Defendant liable.  Therefore, Count VII will be dismissed along with the rest of the counts in the Amended Complaint, particularly given that the Court will be giving Plaintiff an opportunity to file a further amended complaint.

the fact that Huffman sexually assaulted Plaintiff at their place of work, "the sexual assault was not within the course and scope of [his] employment because the act was not in furtherance of [his] employment with" Defendant.  *Goss*, 79 So. 3d at 132.

**CONCLUSION**

For the reasons discussed above, it is **ORDERED AND ADJUDGED** that the Motion [DE 22] is **GRANTED** to the extent that the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.  Plaintiff may file a second amended complaint on or before **May 26, 2026**.  Failure to do so may result in dismissal of this action without further notice.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 10th day of May 2026.

Jared M. Strauss
United States Magistrate Judge

16